IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| CANTERS DELI LAS VEGAS, LLC, *et al.* | : : | |
|       Plaintiffs, | : : | |
|       v. | : : | CIVIL ACTION NO. 19-3030 |
| FREEDOMPAY, INC. | : : | |
|       Defendants. | : | |

Goldberg,    J.                                                    May 14, 2020

## MEMORANDUM

Plaintiffs, the owners of two delis, have sued Defendant FreedomPay, Inc., a provider of secure "switching" services used to facilitate credit card transactions, in connection with the theft of funds by a former indirect owner of the Plaintiff companies. Defendant moves, under Federal Rules of Civil Procedure 12(b)(6) and 12(f), to dismiss and/or strike certain allegations from the Amended Complaint. For the following reasons, I will grant the Motion in part and deny it in part.

## I.      FACTS IN THE AMENDED COMPLAINT

The following facts are taken from the Amended Complaint.[1]

Plaintiffs Canters Deli Las Vegas, LLC ("CDLV") and Canters Deli Tivoli Village LLC ("CDTV") (collectively, "Plaintiffs") own two Canters Delis, both of which are located in Las Vegas, Nevada. Mikhail Siretskiy had an indirect ownership in CDLV and CDTV by virtue of his ownership of former members High Roller Holding Firm, LLC and Tivoli Holding Firm, LLC.

---

[1] In deciding a motion under Federal Rule of Civil Procedure 12(b)(6), the court must accept all factual allegations in the complaint as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading, the plaintiff may be entitled to relief. Atiyeh v. Nat'l Fire Ins. Co. of Hartford, 742 F. Supp. 2d 591, 596 (E.D. Pa. 2010).

Under the Operating Agreements for each of the Plaintiffs, Siretskiy had no right to participate in Plaintiffs' management or control.  (Am. Compl. ¶¶ 8–11.)

On December 6, 2016, Plaintiffs entered into Merchant Processing Applications and Agreements with Bank of America Merchant Services, LLC and Bank of America, N.A. (collectively, "BOA").  Pursuant to these agreements, BOA was obligated to procure monies from processed credit and debit card transactions at the Plaintiffs' delis, as provided by Defendant FreedomPay, Inc. ("FPI"), and to deposit those settled funds into a deposit account maintained and specified by Plaintiffs.  (Id. ¶¶ 12–13.)

On June 12, 2017, Plaintiffs entered into Secure Switching Product Agreements with FPI (the "FPI Agreements").  Pursuant to Section 1.1 of the FPI Agreements, FPI was obligated to provide secure switching services and equipment to Plaintiffs at their retail deli locations.  In effect, FPI acted as an intermediary third party "switcher," providing data related to processed credit and debit transactions from both of Plaintiffs' delis to BOA in order to facilitate the procurement and settlement of payments.  FPI also agreed to provide the card swiping equipment to be used at Plaintiffs' delis.  (Id. ¶¶ 14–20.)

In addition, the FPI Agreements provided that FPI would provide secure switching services pursuant to something called SSP Order.  Under Section 1.3 of the FPI Agreements, FPI was required to "configure and load Client information onto the System as appropriate in order to perform the Secure Switching."  FPI also warranted that it would "perform all Direct Secure Switching under the this [sic] Agreement in a timely, professional and workmanlike manner using reasonable care."  In exchange for these secure switching services, Plaintiffs agreed to pay to FPI agreed upon fees, in accordance with Section 3.1 and Exhibit A to the FPI Agreements.  The term of the FPI Agreements continued until the expiration of all SPP Orders unless terminated earlier in accordance with the terms of the FPI Agreements.  (Id. ¶¶ 21–27.)

2

In April 2018, Siretskiy visited a BOA branch at 1100 Green Valley Parkway, Henderson, Nevada (the "Green Valley Branch") and opened deposit and savings accounts in the name of "Canters Deli Tivoli, Inc" and "Canters Deli Linq., Inc." Siretskiy falsely claimed that he had won a lawsuit against Plaintiffs and was taking over their Las Vegas delis. Thereafter, on April 25, 2018, Siretskiy was approved for merchant services by BOA and obtained two VAR (value added reseller) Sheets, which are instructional sheets containing information, such as merchant account numbers and associated bank deposit accounts, that is provided to a third-party payment data collector, such as FPI. The information is configured with that third party's systems, so that the merchant servicer can procure and settle monies into accounts specified by the sheet. (Id. ¶¶ 28–33.)

On June 14, 2018, Siretskiy provided the VAR Sheets obtained from BOA to FPI, representing that he was Plaintiffs' owner. Siretskiy then requested that FPI change the depository accounts for transactions processed at Plaintiffs' delis to his own depository accounts, as instructed by the VAR Sheets. According to the Amended Complaint, FPI took Siretskiy at his word, without verifying his representations, without contacting anyone at Plaintiffs to confirm, and without being given any legal documents showing the change in ownership that was claimed. Ultimately, Siretskiy converted processed credit and debit card transactions for eight business days at CDLV and fourteen business days at CDTV. (Id. ¶¶ 34–40.)

On June 19, 2018, Plaintiffs' counsel wrote to FPI about this error and demanded that the funds be reinstated into Plaintiffs' accounts. FPI's General Counsel responded that FPI was merely a passive third-party intermediary and implied that the problem arose as a result of BOA's conduct. In a June 27, 2018 conversation with Plaintiffs' counsel, BOA's counsel stated that the conversion resulted from FPI's conduct. (Id. ¶¶ 41–49.)

On June 29, 2018, Plaintiffs' counsel wrote to FPI and BOA jointly, demanding return of the monies wrongfully taken. BOA responded that, due to the alleged dispute between Plaintiffs

and Siretskiy as to rightful ownership of the settlement funds, it was issuing a funding hold on Plaintiffs' merchant accounts until receipt of a Court order or joint written instructions from Plaintiffs and Siretskiy.  (Id. ¶¶ 49–52.)

On June 22, 2018, Plaintiffs terminated the FPI Agreements.  (Id. ¶ 56.)

On October 2, 2018, Plaintiffs filed suit against Defendants FPI and BOA in the United States District Court for the District of Nevada.  Following FPI's motion for change of venue, the case was transferred to my docket on July 15, 2019.  Plaintiffs then filed the Amended Complaint on September 3, 2019, dropping BOA as a Defendant and alleging, against FPI only, breach of contract, gross negligence, and concerted tortious conduct/civil aiding and abetting.  Defendant FPI now moves to dismiss all claims in the Amended Complaint and to strike Plaintiffs' demands for punitive and consequential damages and attorneys' fees.

## II.     STANDARDS OF REVIEW

### A.     Federal Rule of Civil Procedure 12(b)(6)

Under Federal Rule of Civil Procedure 12(b)(6), a defendant bears the burden of demonstrating that the plaintiff has not stated a claim upon which relief can be granted.  Fed. R. Civ. P. 12(b)(6); see also Hedges v. United States, 404 F.3d 744, 750 (3d Cir. 2005).  The United States Supreme Court has recognized that "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions."  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quotations omitted).  "[T]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" and only a complaint that states a plausible claim for relief survives a motion to dismiss.  Ashcroft v. Iqbal, 556 U.S. 662, 678–79 (2009).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Id.

at 678. A complaint does not show an entitlement to relief when the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct. Id. at 679.

The Court of Appeals has detailed a three-step process to determine whether a complaint meets the pleadings standard. Bistrian v. Levi, 696 F.3d 352 (3d Cir. 2014). First, the court outlines the elements a plaintiff must plead to state a claim for relief. Id. at 365. Next, the court must "peel away those allegations that are no more than conclusions and thus not entitled to the assumption of truth." Id. Finally, the court "look[s] for well-pled factual allegations, assume[s] their veracity, and then 'determine[s] whether they plausibly give rise to an entitlement to relief.'" Id. (quoting Iqbal, 556 U.S. at 679). The last step is "'a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'" Id. (quoting Iqbal, 556 U.S. at 679).

### B.   Federal Rule of Civil Procedure 12(f)

Federal Rule of Civil Procedure 12(f) provides that "the court may order stricken from any pleading any insufficient defense or any redundant, immaterial, impertinent or scandalous matter." Fed. R. Civ. P. 12(f). Content is immaterial when it "has no essential or important relationship to the claim for relief." Donnelly v. Commonw. Fin. Sys., No. 07–1881, 2008 WL 762085, at *4 (M.D. Pa. Mar. 20, 2008) (citing Del. Healthcare, Inc. v. MCD Holding Co., 893 F. Supp. 1279, 1291–92 (D. Del. 1995)). Content is impertinent when it does not pertain to the issues raised in the complaint. Id. Scandalous material "improperly casts a derogatory light on someone, most typically on a party to the action." Id. (citing Carone v. Whalen, 121 F.R.D. 231, 233 (M.D. Pa. 1988)).

"The standard for striking a complaint or a portion of it is strict, and 'only allegations that are so unrelated to the plaintiffs' claims as to be unworthy of any consideration should be stricken.'" Steak Umm Co., LLC v. Steak'Em Up, Inc., No. 09–2857, 2009 WL 3540786, at *2 (E.D. Pa. Oct. 29, 2009) (citing Johnson v. Anhorn, 334 F. Supp.2d 802, 809 (E.D. Pa. 2004)). "The purpose of a motion to strike is to clean up the pleadings, streamline litigation, and avoid

unnecessary forays into immaterial matters." McInerney v. Moyer Lumber and Hardware, Inc., 244 F. Supp. 2d 393, 402 (E.D. Pa. 2002).  Although "[a] court possesses considerable discretion in disposing of a motion to strike under Rule 12(f)," such motions are "not favored and usually will be denied unless the allegations have no possible relation to the controversy and may cause prejudice to one of the parties, or if the allegations confuse the issues in the case." Ford-Greene v. NHS, Inc., 106 F. Supp. 3d 590, 615 (E.D. Pa. 2015) (quoting River Road Dev. Corp. v. Carlson Corp., No. 89–7037, 1990 WL 69085, at *3 (E.D. Pa. May 23, 1990)).

## III.   DISCUSSION

Defendant FPI seeks dismissal of the entire Amended Complaint on several grounds.  First, it argues that all of Plaintiffs' claims are barred by the FPI Agreements.  Second, it asserts that Plaintiffs' tort claims are barred by the gist of the action and economic loss doctrines.  Finally, Defendant contends that Plaintiffs' aiding and abetting claim must be dismissed because Plaintiffs cannot plausibly allege the elements of such a claim.

### A.   Whether Plaintiffs' Claims Are Barred by the FPI Agreements

Section 6.1 of the FPI Agreements provides:

> FREEDOMPAY SHALL HAVE NO LIABILITY WITH RESPECT TO THE PERFORMANCE OF THIRD-PARTY GOODS OR THIRD-PARTY SERVICES.  THE LIABILITY OF FREEDOMPAY ARISING OUT OF OR RELATING TO THIS AGREEMENT AND THE DIRECT SECURE SWITCHING SHALL BE LIMITED TO THE ACTUAL AMOUNT PAID BY CLIENT TO FREEDOMPAY FOR THE SECURE SWITCHING GIVING RISE TO SUCH DAMAGES DURING THE PRIOR SIX MONTHS, BUT IN NO EVENT MORE THAN $250,000. NOTWITHSTANDING ANYTHING TO THE CONTRARY CONTAINED IN THIS AGREEMENT, FREEDOMPAY SHALL HAVE NO LIABILITY UNDER THIS AGREEMENT OR IN ANY WAY RELATED TO GOODS OR SECURE SWITCHING FOR ANY INCIDENTAL, INDIRECT, EXEMPLARY, PUNITIVE OR CONSEQUENTIAL DAMAGES, OR ANY LOST DATA, LOST BUSINESS, LOST REVENUE OR OPPORTUNITY COST OR DAMAGE TO REPUTATION OR GOODWILL, HOWSOEVER

> ARISING (WHETHER FORESEEABLE OR NOT, OR WITHIN
> THE CONTEMPLATION OF EITHER PARTY) WHETHER
> ARISING IN CONTRACT OR TORT (INCLUDING
> NEGLIGENCE AND BREACH OF STATUTORY OR OTHER
> DUTY) OR OTHER FORM OF EQUITABLE OR LEGAL
> THEORY.

(Am. Compl., Exs. A & B § 6.1.)  Defendant posits that these broad limitations of liability bar all of Plaintiffs' claims because: (a) Plaintiffs' claims relate to the performance of third-party services; (b) Plaintiffs' breach of contract claims relate to lost data, business, and or/revenue; (c) Plaintiffs' claims for breach of the duty of good faith and fair dealing are prohibited; (d) Plaintiffs' claims for consequential and punitive damages are expressly precluded; and (e) Plaintiffs cannot seek attorney's fees.  I address each argument individually.[2]

1. <u>Whether the FPI Bars Plaintiffs' Claims Because They Relate to the Performance of Third-Party Services</u>

Defendant first contends that Section 6.1 of the FPI Agreements expressly precludes Plaintiffs' claims because they arise from and relate to "the performance of . . . third-party services" provided to Plaintiffs by BOA.  Defendant reasons that BOA improperly approved Siretskiy for merchant services and provided the "instructional" VAR Sheet to Siretskiy, and that Defendant simply followed BOA's instructions, as provided by Siretskiy, authorizing transmission of funds to Siretskiy's BOA account.  Plaintiffs respond that this argument is without merit because it is overly broad as to the extent of Defendant's limitation of liability, and it disregards key allegations of the Amended Complaint.

---

[2]   "In deciding a Rule 12(b)(6) motion, a court must consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents."  <u>Mayer v. Belichick</u>, 605 F.3d 223, 230 (3d Cir. 2010).  As the FPI Agreements are attached to the Amended Complaint, I may consider them in ruling on Defendant's Motion to Dismiss and/or Strike.

A plain interpretation of § 6.1 does not foreclose Plaintiffs' claims.  Pennsylvania courts apply the "plain meaning rule" of interpretation of contracts, which assumes that the intent of the parties to an instrument is "embodied in the writing itself, and when the words are clear and unambiguous the intent is to be discovered only from the express language of the agreement."  Cnty. of Dauphin v. Fid. & Deposit Co., 770 F. Supp. 248, 251 (M.D. Pa.) (quotation omitted), aff'd, 937 F.2d 596 (3d Cir. 1991).  "A court's purpose in examining a contract is to interpret the intent of the contracting parties, as objectively manifested by them."  Hullett v. Towers, Perrin, Forster & Crosby, Inc., 38 F.3d 107, 111 (3d Cir. 1994).  First, the court must make the preliminary inquiry as to whether the contract before it is ambiguous.  Id.  A contract provision is ambiguous if it is susceptible of two reasonable alternative interpretations.  Id.  If the contract is determined to be ambiguous, then the interpretation of the contract is left to the factfinder, to resolve the ambiguity in light of extrinsic evidence.  Id.  Where, however, the written terms of the contract are not ambiguous and can only be read one way, the court will interpret the contract as a matter of law.  Id.; Freedom Props., L.P. v. Lansdale Warehouse, Inc., 06-5469, 2007 WL 2254422, at *3 (E.D. Pa. Aug. 2, 2007) ("Courts can resolve contract disputes on a motion to dismiss if the claims under which the plaintiff seeks relief are barred by the unambiguous terms of a contract attached to the pleading, because the interpretation of an unambiguous contract is a matter of law for the court.") (internal quotations omitted).

Application of these principles to Section 6.1 reveals that while the provision prevents Defendant from facing liability for the performance of third-party goods or services, it does not bar liability "arising out of or relating to" the FPI Agreements even if they involve some third-party goods and/or services.  So long as the liability allegedly arose out of some action or failure to act by Defendant pursuant to the FPI Agreements, § 6.1's limitation of liability does not come into play.

To that end, Plaintiffs plead that Defendant is liable not for BOA's actions, but rather for its own individually wrongful actions.  For example, the Amended Complaint alleges:

- [After] Siretsky requested that FPI change the depository accounts for transactions processed at CDLV and CDTV to his own depository accounts . . . FPI took Siretskiy at his word—without verifying his representations, without contacting anyone at CDLV to confirm them, and without first being given any legal documents showing the change in ownership that was claimed.  (Am. Compl. ¶¶ 37, 39.)

- FPI's failures to conduct even the most basic due diligence resulted in the conversion of the processed credit and debit card transactions at CDLV over eight business days (June 14, 2018 and June 16–22, 2018) and at CDTV over fourteen business days (June 9, 2018–June 23, 2018) into a deposit account owned and controlled by Siretskiy and/or one of his companies.  (Am. Compl. ¶ 40.)

- FPI has breached its obligations under the FPI Agreements by, *inter alia:* . . . a. Recklessly failing to provide secure switching services to Plaintiffs on June 14, 2018 and June 16–23, 2018;  . . . b. Recklessly loading Siretskiy's information onto its system in connection with Plaintiffs' accounts instead of Plaintiffs' information; and  . . . c. Failing to perform its switching services with reasonable care.  (Am. Compl. ¶ 62.)

- FPI breached th[e] duties [of good faith and fair dealing] by performing in a manner that was unfaithful to the purpose of the FPI Agreements by *inter alia:* . . . a. Recklessly failing to verify the accuracy of the representations made by Siretskiy with respect to ownership of the Plaintiffs and their FPI accounts; and . . . b. Recklessly failing and refusing to take any actions to remedy the wrongful conversion of funds outlined herein above, despite multiple written notices from Plaintiffs regarding the same.

Such allegations go well beyond an attempt to impose liability on Defendant for BOA actions.  They assert independent breaches of duty by Defendant that have resulted in losses to Plaintiffs.  Taking these allegations as true—as I must at this stage of the litigation—I find that that Plaintiffs' breach of contract claim is not barred by the first sentence of § 6.1 of the FPI Agreements.

          2.      <u>Whether the FPI Agreements Bar Plaintiffs Claims Because They Relate to Lost Data, Business, and/or Revenue</u>

Defendant's second argument contends that Plaintiffs' breach of contract claim is barred by the second portion of § 6.1, which states that "Freedompay shall have no liability under this agreement or in any way related to goods or secure switching for any incidental, indirect, exemplary, punitive or consequential damages, or any lost data, lost business, lost revenue or opportunity cost

or damage to reputation or goodwill, howsoever arising (whether foreseeable or not, or within the contemplation of either party) whether arising in contract or tort (including negligence and breach of statutory or other duty) or other form of equitable or legal theory." [3] (Am. Compl, Exs. A & B § 6.1 (capitalization omitted).)  Defendant posits that the liability alleged in the Amended Complaint is for lost data, lost business, and/or lost revenue, as it is a claim that revenues generated by the deli business were lost.  Because § 6.1 precludes recovery of such damages, Defendant asserts that Plaintiffs' breach of contract claim against it must be dismissed.

Defendants' argument fails for two reasons.  First and foremost, § 6.1 does not render Defendant immune from suit.  Pennsylvania law "recognizes different methods by which a party can limit his/her exposure to damages resulting from his/her negligent performance of a contractual obligation[,]" and among those methods are exculpatory clauses and limitation of liability clauses.  See Valhal Corp. v. Sullivan Assoc., Inc., 44 F.3d 195, 202 (3d Cir. 1995) (citing Pennsylvania cases).  Exculpatory clauses immunize a party from the consequences of his or her negligence.  Id. (citing Topp Copy Products, Inc. v. Singletary, 626 A.2d 98, 99 (Pa. 1993)).  In contrast, limitation of liability clauses do not immunize a party from liability; rather, they merely place a limit, or a cap, upon such liability.  Valhal Corp., 44 F.3d at 202.

Here, the parties agree that § 6.1 is a "limitation of liability" clause. [4]  By its plain language, it limits the type of damages that Plaintiffs may recover from Defendant and places a cap on recoverable damages.  Notably absent from this language is any limitation on Plaintiffs' ability to

---

[3]     Defendant also claims that this provision bars Plaintiffs' gross negligence and aiding and abetting claims.  As I will dismiss these claims on other grounds set forth *infra*, I need not discuss this argument.

[4]     Plaintiffs spend an extensive portion of their brief arguing that § 6.1 is not an exculpatory clause and, even if so construed, is not enforceable as a matter of law.  Given the plain language of the contract, as well as Defendant's concession that § 6.1 is a limitation of liability clause and not an exculpatory clause, I need not address any of these arguments.

pursue a breach of contract action.  Accordingly, while Plaintiffs may be restricted in the type of remedies they may recover, they are not precluded from bringing a breach of contract action and holding Defendant liable for the alleged improper performance of its contractual duties.  In turn, such a contractual provision does not allow outright dismissal of the breach of contract claim.

Second, the language of the contract does not allow me to conclude, at this stage, that § 6.1 precludes recovery of all of Plaintiffs' requested damages resulting from an alleged breach. Pennsylvania law "distinguishes 'between general damages—those ordinary damages that flow directly from the breach; and special or consequential damages—those collateral losses, such as expenses incurred or gains prevented which result from the breach.'" LBL Skysystems (USA), Inc. v. APG-America, Inc., 319 F. Supp. 2d 515, 523 (E.D. Pa. 2004) (quoting McDermott v. Party City Corp., 11 F. Supp. 2d 612, 624 (E.D. Pa. 1998).  As explained by the United States Court of Appeals for the Third Circuit, "the difference between direct and consequential damages depends on whether the damages represent (1) a loss in value of the other party's performance, in which case the damages are direct, or (2) collateral losses following the breach, in which case the damages are consequential." Atl. City Assoc., LLC v. Carter & Burgess Consultants, Inc., 453 F. App'x 174, 179 (3d Cir. 2011) (citing Restatement (Second) of Contracts § 347 cmt. c (1981)).

Here, the portion of § 6.1 on which Defendant relies—the restriction on recovery for lost data, lost business, lost revenue or opportunity cost or damage to reputation or goodwill—appears to preclude only the recovery of consequential damages.[5]  Contractual provisions limiting recovery

---

[5] Although cursorily mentioned by Defendant in its reply brief, neither party discusses the import of the language in § 6.1 that "the liability of FreedomPay arising out of or relating to his Agreement and the direct secure switching shall be limited to the actual amount paid by client to FreedomPay for the secure switching giving rise to such damages during the prior six months." (Am. Compl., Exs. A & B § 6.1 (capitalization omitted).)  In any event, as this language is merely part of a limitation of liability clause, it would still not constitute grounds on which to dismiss the breach of contract claim.

for lost profits, lost business revenues, etc., are generally construed as limitations on consequential damages.  See, e.g., AM/PM Franchise Ass'n v. Atlantic Richfield Co., 584 A.2d 915, 921 n.8 (Pa. 1990) (holding that "lost profits" are a type of consequential damage, not a separate category of damages); Battle Born Munitions, Inc. v. Dick's Sporting Goods, Inc., No. 18-1418, 2019 WL 1978429, at *8 (W.D. Pa. May 3, 2019) (interpreting limitation on recovery of loss of profits, business revenues, business interruption and the like to be a restriction on consequential damages); Horsehead Corp. v. Topcor Augusta, LLC, No. 15-198, 2018 WL 5634330, at *33 (W.D. Pa. Aug. 29, 2018) (characterizing provision precluding recovery of damages for "loss of use, loss of revenue or loss of profits" as limitation on consequential damages).

Distinguishing this line of cases, Defendant contends that § 6.1 is written such that Defendant shall have no liability for any "incidental, indirect, exemplary, punitive, or consequential damages _**or**_ any lost data, lost business, lost revenue . . ."  Defendant reasons that the use of the word "or" means that the term "lost revenue" stands alone as one of the items for which it has no liability.  It goes on to assert that Plaintiffs' claim seeking money earned from previous business transactions that was diverted as a result of the conduct alleged in the Amended Complaint is clearly "lost revenue" and thus not recoverable.

Assuming without deciding that Defendant is correct that the phrase "lost revenue" should be read separately from "consequential damages," the term "lost revenue" is, in itself, ambiguous. "A contractual term is ambiguous where, "viewed in the context of the entire [contract], [it] is 'reasonably susceptible of different constructions and capable of being understood in more than one sense.'" J.C. Penney Life Ins. Co. v. Pilosi, 393 F.3d 356, 363 (3d Cir. 2004) (quoting Medical Protective Co. v. Watkins, 198 F.3d 100, 103 (3d Cir. 1999)).  When a term is deemed ambiguous, its interpretation is a question for the jury.  Welding Engineers Ltd. v. NFM/Welding Engineers, Inc., 352 F. Supp. 3d 416, 427 (E.D. Pa. 2018).

Here, the parties have offered two reasonable interpretations of the term "lost revenue." Defendant contends that "lost revenue" means "any" revenue related to the switching, such as here, where the revenue was already earned from a customer but was then diverted into the wrong bank account.  Plaintiffs contend that the term as used in § 6.1 refers only to revenue that was never earned as a result of a failure by Defendant, *e.g.*, lost revenue resulting from when a payment terminal malfunctions and the retailer is unable to process payments that would have otherwise been processed.  Plaintiffs assert that the requested damages do not seek lost data, lost business, or lost revenue—*i.e.*, consequential damage—but rather direct monetary damages—*i.e.*, direct damages—resulting from Defendant's diversion of money made from prior business transactions.

Ascertaining the correct interpretation requires inquiry into extrinsic evidence and, as such, is not appropriate for resolution on a motion to dismiss.  In turn, I decline to dismiss the breach of contract claim on this ground.

3. <u>Whether the FPI Agreements and Pennsylvania Law Bar Plaintiffs' Claim for Breach of the Duty of Good Faith and Fair Dealing</u>

Defendant next seeks dismissal of Plaintiffs' claim for breach of the duty of good faith and fair dealing.  Defendant contends that because the breach of contract claim should be dismissed, and because an independent breach of duty of good faith and fair dealing claim is not cognizable under Pennsylvania law, this claim must be dismissed as well.

Under Pennsylvania law, "[e]very contract imposes a duty of good faith and fair dealing on the parties in the performance and enforcement of the contract."  <u>J.J. DeLuca Co., Inc. v. Toll Naval Assocs.</u>, 56 A.3d 402, 412 (Pa. Super. Ct. 2012) (quoting <u>Giant Food Stores, LLC v. THF Silver Spring Dev., L.P.</u>, 959 A.2d 438, 447-448 (Pa. Super. Ct. 2008)).  While "[t]here is no one-size-fits-all definition of good faith," <u>Kantor v. Hiko Energy, LLC</u>, 100 F. Supp. 3d 421, 430 (E.D. Pa. 2015), the covenant generally requires that the parties "bring about a condition or . . . exercise discretion

in a reasonable way." USX Corp. v. Prime Leasing, Inc., 988 F.2d 433, 438 (3d Cir. 1993); see also Restatement (Second) of Contracts § 205 cmt. d.  "The function of the covenant is to prohibit a party from taking advantage of gaps in a contract." Curley v. Allstate Ins. Co., 289 F. Supp. 2d 614, 617 (E.D. Pa. 2003) (internal quotation marks omitted).  Where a breach of the covenant of good faith of fair dealing is pled in conjunction with a viable breach of contract claim, it should not be stricken from a complaint.  See Pratts v. State Farm Fire & Cas. Co., No. 16-2385, 2017 WL 4151182, at *6 (M.D. Pa. Sept. 19, 2017).

As set forth above, Plaintiffs' breach of contract claim survives a Rule 12(b)(6) review.  The breach of the covenant of good faith and fair dealing is subsumed within that breach of contract claim and, therefore, remains viable as well.  Accordingly, I will deny this portion of Defendant's Motion.

4.   Whether the FPI Agreements Preclude Plaintiffs' Claims for Consequential and Punitive Damages

Defendant further contends that the express terms of § 6.1 require that Plaintiffs' claims for consequential and punitive damages be stricken under Federal Rule of Civil Procedure 12(f).  As noted above, this provision expressly states that Defendant "shall have no liability . . . for any . . . punitive or consequential damages . . ."  (Am. Compl., Exs. A & B § 6.1.)  Based on this language, Defendant posits that a claim for punitive damages is immaterial and impertinent.

Plaintiffs do not argue that this provision is unenforceable generally with respect to their breach of contract claims.  Rather, they contend that they only seek consequential and punitive damages in connection with their tort claims for gross negligence concerted tortious action.  They reason that "since limitations of liability for gross negligence and intentional tort claims are invalid under the common law of Pennsylvania, [Plaintiffs are] entitled to, and can request, punitive damage and consequential damages pursuant to these claims."  (Pls.' Opp'n Mot. To Dismiss 16.)

Plaintiff's argument is mistaken.  "[T]here is no doubt as to the legality of a limitation of liability provision in a contract between ordinary business persons."  <u>Great Northern Ins. Co. v. ADT Sec. Servs., Inc.</u>, 517 F. Supp. 2d 723, 750 (W.D. Pa. 2007).  Although "the right to pursue a claim for grossly negligent conduct remains if such contractual clause covers negligence only, . . . where 'other' conduct is included in the exculpatory/limitation of liability clause, most of the courts construing such clauses have held that the contractual exclusion or limitation of liability remains fully enforceable even if gross negligence is alleged and proved."  <u>Neuchatel Ins. v. ADT Sec. Sys., Inc.</u>, No. 96-5387, 1998 WL 966080, at *10 (E.D. Pa. Nov. 5, 1998) (citing cases).  More succinctly, limitation of liability clauses, if correctly worded, may properly apply to acts of gross negligence.  <u>See, e.g.</u>, <u>Great Northern</u>, 517 F. Supp. 2d at 751 (reference to "negligence, active or otherwise" in the limitation of liability provision should be construed to apply to acts of gross negligence); <u>Neuchatel Ins.</u>, 1998 WL 966080, at *10 (limitation of liability provision's limitation of damages resulting from "negligence, active or otherwise" applied to gross negligence); <u>Leprino Foods Co. v. Gress Poultry, Inc.</u>, 379 F. Supp. 2d 659, 680 (M.D. Pa. 2005) (holding that, where limitation of liability clause applied to "liability for losses other than breakage, misdelivery, or unexplained shortage," it was "sufficiently expansive to encompass gross negligence"); <u>compare</u> <u>Royal Indem. Co. v. Sec. Guards, Inc.</u>, 255 F. Supp. 2d 497, 503 (E.D. Pa. 2003) (finding gross negligence claim not barred where limitation of liability provision limited liability for damages "caused solely by the negligence" of defendant).[6]

---

[6]     Plaintiffs' reliance on the Pennsylvania Supreme Court decision in <u>Feleccia v. Lackawanna Coll.</u>, 215 A.3d 3 (Pa. 2019) is misplaced.  In that case, the Court held that a pre-injury waiver, containing an exculpatory clause, signed by student athletes playing football for the defendant college, was not enforceable against claims of gross negligence and recklessness because it was against public policy.  <u>Id.</u> at 21

This case is distinguishable.  <u>Feleccia</u> involved a waiver form signed by student athletes relieving the college of liability for personal injury.  By contrast, the contractual provision here was part of a commercial contract bargained for at arms-length between two sophisticated entities.

Here, Section 6.1 of the FPI Agreements is broadly worded to preclude recovery of consequential or punitive damages "*howsoever arising* (whether foreseeable or not, or within the contemplation of either party) *whether arising in contract or tort* (including negligence and breach of statutory or other duty . . ." (Am. Compl., Exs. A & B § 6.1 (emphasis added).) The broad reference to any contract or tort claim and to any liability "howsoever arising" is sufficiently expansive to encompass claims for gross negligence. In turn, the provision's express exclusion of consequential and punitive damages from the available recoverable damages is enforceable with respect to any claim brought by Plaintiffs. Accordingly, I will grant Defendant's Motion to Strike Plaintiffs' request for consequential and punitive damages.[7]

> 5.  Whether the FPI Agreements and Pennsylvania Law Preclude Plaintiffs'
>     Claim for Attorneys' Fees

Defendant's last argument under the FPI Agreements seeks to strike Plaintiffs' request for attorneys' fees. Specifically, the Amended Complaint requests "an award of attorneys' fees and costs as may be permitted under the FPI Agreements and applicable law." (Am. Compl. ¶ 69 & Prayer for Relief ¶ 5.) Defendant now posits that because neither the FPI Agreements nor applicable law permit an award of attorneys' fees and costs in this case, Plaintiffs' prayer for relief seeking such damages should be stricken.

Plaintiffs respond with the simple assertion that "the Amended Complaint has just been filed and no discovery commenced. As discovery progresses, it may be discovered that Pennsylvania's

---

Moreover, the provision at issue in <u>Felicca</u> was an exculpatory clause, which is held to a more stringent standard for enforcement. <u>See</u> <u>Valhal Corp. v. Sullivan Assoc., Inc.</u>, 44 F.3d 195, 204 (3d Cir. 1995). Here, both parties agree that the contractual provision at issue is a limitation of liability clause, not an exculpatory clause.

[7]   The parties dispute whether § 6.1 would also apply to Plaintiffs' claim for aiding and abetting conversion. As I dismiss this claim on other grounds, I need not address that issue

various statutes allowing the award of attorney's fees may be applicable to the facts of this case."
(Pls.' Resp. Opp'n 16–17 n.2.)

Such an argument is insufficient to rescue their claim for attorneys' fees. Pennsylvania law does not allow awards for attorneys' fees in suits for ordinary breach of contract (the "American Rule") "unless there is express statutory authorization, a clear agreement of the parties[,] or some other established exception." McMullen v. Kutz, 985 A.2d 769, 775 (Pa. 2009) (quoting Mosaica Academy Charter Sch. v. Commw. Dept. of Educ., 813 A.2d 813, 822 (Pa. 2002)). Where a court can determine from the face of the complaint that a plaintiff cannot recover attorneys' fees, such a request may be stricken. See, e.g., Berger v. Hahnemann Univ. Hosp., No. 17-2295, 2017 WL 5570340, at *9 (E.D. Pa. Nov. 17, 2017), aff'd, 765 F. App'x 699 (3d Cir. 2019); Craker v. State Farm Mut. Auto. Ins. Co., No. 11-225, 2011 WL 1671634, at *5 (W.D. Pa. May 3, 2011); Moravian Dev. Corp. v. Dow Chem. Co., 651 F. Supp. 144, 150 (E.D. Pa. 1986).

Here, the express terms of the contract governing the parties' relationship does not permit an award of attorneys' fees. Moreover, Plaintiffs bring no statutory claim on which an award of attorneys' fees could be premised. Finally, Plaintiffs claimed need for factual discovery does not meet their burden of establishing a legal basis on which an attorneys' fee award could be premised. As the face of the Amended Complaint reveals no legal grounds for the requested attorneys' fees, and as I have considerable discretion in considering motions to strike, I will grant Defendant's request to strike the attorneys' fee demand.

### B.    Whether Plaintiffs' Tort Claims Are Barred by the Gist of the Action Doctrine

Defendant next posits that Plaintiffs' tort claims must be dismissed under the gist of the action doctrine. I agree. [8]

---

[8]  Defendant also seeks dismissal of the tort claims under the economic loss doctrine. As I find that the gist of the action doctrine applies, I need not discuss the economic loss doctrine.

Pennsylvania courts are generally cautious about permitting tort recovery on contractual breaches. Glazer v. Chandler, 200 A.2d 416, 418 (Pa. 1964). The "gist of the action" doctrine "is designed to maintain the conceptual distinction between breach of contract claims and tort claims [by] preclud[ing] plaintiffs from recasting ordinary breach of contract claims into tort claims." eToll, Inc. v. Elias/Savion Advertising, Inc., 811 A.2d 10, 14 (Pa. Super. Ct. 2002). The simple existence of a contractual relationship between two parties does not preclude one party from bringing a tort claim against the other. Smith v. Lincoln Benefit Life Co., No. 08–1324, 2009 WL 789900, at *20 (W.D. Pa. Mar. 23, 2009), aff'd, 395 F. App'x. 821 (3d Cir. 2010). The doctrine, however, forecloses a party's pursuit of a tort action for the mere breach of contractual duties, "without any separate or independent event giving rise to the tort." Smith, 2009 WL 789900, at *20 (quoting Air Prods. and Chems., Inc. v. Eaton Metal Prods. Co., 256 F. Supp. 2d 329, 340 (E.D. Pa. 2003)).

Determining whether the gist of the action doctrine applies "call[s] for a fact-intensive judgment as to the true nature of a claim." Williams v. Hilton Grp., PLC, 93 F. App'x 384, 386 (3d Cir. 2004); see also Milo, LLC v. Procaccino, No. 16-5759, 2020 WL 1853499, at *7 (E.D. Pa. 2020). "In this regard, the substance of the allegations comprising a claim in a plaintiff's complaint are of paramount importance, and, thus, the mere labeling by the plaintiff of a claim as being in tort . . . is not controlling. Bruno v. Erie, 106 A.3d 48, 68 (Pa. 2014). Rather, "[t]o evaluate whether the gist of the action doctrine applies, a court must identify the duty breached, because 'the nature of the duty alleged to have been breached . . . [is] the critical determinative factor in determining whether the claim is truly one in tort, or for breach of contract.'" Downs v. Andrews, 639 F. App'x 816, 819 (3d Cir. 2016) (quoting Bruno, 106 A.3d at 68). "If the facts of a particular claim establish that the duty breached is one created by the parties by the terms of their contract—i.e., a specific promise to do something that a party would not ordinarily have been obligated to do but for the

existence of the contract—then the claim should be treated as one for breach of contract." Bruno, 106 A.3d at 68. "If, however, the facts establish that the claim involves the defendant's violation of a broader social duty owed to all individuals, which is imposed by the law of torts and, hence, exists regardless of the contract, then it must be regarded as a tort." Id.

Plaintiffs' negligence claim is clearly barred by the gist of the action doctrine. The Amended Complaint alleges that "[b]y virtue of its position of exclusive control over the configuration of information onto its system in order to perform secure switching for them, [Defendant] owed a duty of reasonable care to Plaintiffs" and that Defendant breached that duty by failing to verify the accuracy of Siretskiy's representations with respect to ownership of the Plaintiffs and failing to take any actions to remedy the alleged wrongful conversion of funds." (Am. Compl. ¶¶ 71–72.) The duty at issue exists only by way of the FPI Agreements and Defendant's contractual obligation to provide secure switching services to Plaintiffs. Outside the existence of this contract, Defendant would have no obligation to provide these services at all—let alone an obligation to exercise reasonable care in providing them. Contrary to Plaintiffs' arguments, no broader social duty exists for Defendant to "not act recklessly in handling [Plaintiffs'] accounts" or "not ignore [Plaintiffs'] request to remedy its negligence." (Pls. Opp'n Mot. To Dismiss 20.) Accordingly, I will dismiss this claim.

Likewise, Plaintiffs claim for tortious concerted action[9] is barred by the gist of the action doctrine. The Restatement (Second) of Torts § 876 provides:

---

[9]     To the extent Plaintiffs characterize this claim as one for aiding and abetting conversion, it is not clear that such a claim exists. As one federal court has noted, "'aiding and abetting' a conversion does not appear to be a tort in Pennsylvania . . . because I am unconvinced that this is, in fact, a cause of action, and because there has been no legal argument advancing the issue, I find that there is no 'aiding and abetting conversion' tort in Pennsylvania; I have no basis upon which to create torts in this state." Mifflinburg Telegraph, Inc. v. Criswell, 277 F. Supp. 3d 750, 795 (M.D. Pa. 2017); see also Regional Produce Cooperative Corp. v. T.D. Bank, N.A., No. 19-1883, 2020 WL 1444888, at *6 (E.D. Pa. Mar. 24, 2020).

> For harm resulting to a third person from the tortious conduct of another, one is subject to liability if he (a) does a tortious act in concert with the other or pursuant to a common design with him, or (b) knows that the other's conduct constitutes a breach of duty and gives substantial assistance or encouragement to the other so to conduct himself, or (c) gives substantial assistance to the other in accomplishing a tortious result and his own conduct, separately considered, constitutes a breach of duty to the third person.

Rest. (Second) Torts § 876.

Here, the Amended Complaint appears to rely on subsections (b) and (c), alleging, in part, that:

> 81.   FPI knew or had reason to know that Siretskiy's conduct was tortious, intentional, fraudulent, illegal and breached duties owed to Plaintiffs because it failed and refused to verify that Siretskiy was or would become the owner of Plaintiffs.
>
> 82.   FPI gave substantial assistances and encouragement to Siretskiy to breach his duties to Plaintiffs by implementing Siretskiy's demanded changes, which resulted in the wrongful conversion of Plaintiffs' monies.
>
> 83.   FPI's substantial assistance to Siretskiy as described herein separately constitutes a breach of FPI's own duties to Plaintiffs, as described herein.

(Am. Compl. ¶¶ 81–83.)

While Plaintiffs creatively attempt to plead an intentional tort, I find that this claim is simply an attempt to recast a plain breach of contract action into a claim for concerted tortious action. Looking beyond the language and labeling used in the Amended Complaint and inquiring into the core of the cause of action pled, I note that Plaintiffs do not allege that Defendant engaged in any affirmative action to assist Siretsky in the commission of the conversion of funds. They simply assert that Defendant failed perform its obligations to verify that Siretskiy had the authority to change the depository accounts for transactions processed at CDLV and CDTV to his own depository accounts—obligations that would not exist but for the contract between the parties.

Because the duty breached is one contractually created by the parties, I find that it is barred by the gist of the action doctrine.

## IV.     CONCLUSION

In light of the foregoing, I will dismiss Plaintiffs' tort claims (Counts II and III) and strike from the Amended Complaint their claims for punitive and consequential damages and attorneys' fees.  In all other respects, Defendant's Motion to Dismiss will be denied.